UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 11-96-DLB

GARRETT LEE BRAY                                                                              PLAINTIFF

vs.                              **MEMORANDUM OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION                                                  DEFENDANT

\* \* \* \* \* \* \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Garrett Lee Bray applied for a period of disability and disability insurance benefits (DIB) on May 22, 2007. (Tr. 98-107). At the time of filing, Plaintiff was 53 years old and alleged a disability onset date of September 15, 2006. (Tr. 100, 115). Plaintiff alleges that he is unable to work due to "nerves, arthritis, infection around heart, and numbness in right leg." (Tr. 115; Doc. # 10-1 at 2 (alleging "chronic low back pain, heart trouble, breathing problems, nervousness, low IQ and difficulty reading")). His application was denied initially and again on reconsideration. (Tr. 78, 84). At Plaintiff's request, an administrative hearing was conducted via video conference on August 12, 2008. (Tr. 33-

1

63). On December 9, 2008, Administrative Law Judge (ALJ) Robert L. Erwin ruled that Plaintiff was not disabled and therefore not entitled to DIB. (Tr. 21). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 1, 2011. (Tr. 1-5).

On March 28, 2011, Plaintiff filed the instant action. (Doc. # 2). The matter has culminated in cross-motions for summary judgment, which are now ripe for review. (Docs. # 10, 11). Plaintiff has additionally filed a Response to the Commissioner's Motion for Summary Judgement (Doc. # 12).

## II.  DISCUSSION

### A.   Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d

345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.   The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date on September 15, 2006. (Tr. 23). At Step 2, the ALJ found that Plaintiff had the following severe combinations of impairments: "chronic lower lumbar radiculopathy; a history of chronic obstructive pulmonary disease; alcohol dependence, in partial remission; adult anti-social behavior; nicotine dependence; rule out substance-induced mood disorder; and borderline intellectual functioning, provisional (upper range)." (*Id.*). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1. (Tr. 27).

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he must have the freedom to sit or stand as needed to ensure his comfort and must avoid exposure to pulmonary irritants. (Tr. 28). Plaintiff can only occasionally climb, bend, stoop, kneel, crouch or crawl. (*Id.*). He can sustain attention to perform simple tasks for two-hour segments during the course of an eight-hour workday, and is further limited to the performance of tasks requiring only simple instructions. (*Id.*). The ALJ found that Plaintiff "can tolerate coworkers and supervisors in a non-public work setting, and he is able to adapt to changes as needed." (*Id.*). Based upon these findings, the ALJ found that Plaintiff is unable to perform his past relevant work as a rolling machine operator. (Tr. 30).

At Step 5, the ALJ found that Plaintiff was born on February 16, 1954 and that he was 52 years old, which is defined as an individual "closely approaching advanced age," on the alleged disability onset date. (Tr. 31); *see* 20 C.F.R. § 404.1563. The ALJ also found that Plaintiff has a marginal education and is able to communicate in English. (Tr. 31); *see* 20 C.F.R. § 404.1564. Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (Tr. 31). ALJ Erwin therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since Plaintiff's alleged disability onset date of September 15, 2006 through the date of the decision. (*Id.*).

4

**C.     Analysis**

Plaintiff advances two arguments on appeal.  First, Plaintiff contends that the ALJ improperly rejected the opinion of consultative examiner Dr. Tun Nyunt, M.D. (Doc. # 10)  Second, Plaintiff argues that the ALJ "impermissibly struck a compromise" between the opinions of Dr. Nyunt and those of the two state agency non-examining sources in making his residual functional capacity determination. (*Id.*).  The Court will address both of these challenges in turn.

**1.     The ALJ Did Not Improperly Reject the Opinion of Agency Consultative Examiner, Dr. Tun Nyunt**

Plaintiff first argues that the ALJ "improperly rejected the opinion of Dr. Nyunt . . . without substantial contrary evidence." (Doc. # 10-1 at 6).  Dr. Nyunt was a one-time consultative examiner who examined the Plaintiff in July 2007. (Tr. 202-10).  Unlike treating source opinions, consultative examiners' opinions are not entitled to any "special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Sec'y Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) (physician who examined claimant only once was not a treating physician).  When no treating physician opinion has been granted controlling weight, as here, the medical opinion of a consultative examiner is to be weighed considering all of the factors identified in 20 C.F.R. § 404.1527(d)(1) through (6).  These factors include, among others, the examining relationship, the treatment relationship, the supportability of the opinion by relevant evidence, the consistency of the opinion with the record as a whole, and the specialization of the source providing the opinion. *See* 20 C.F.R. § 404.1527(d)(1) through (6).  The Court must uphold the decision of the ALJ when it is supported by substantial evidence, and his decision will

not be reversed merely because there is evidence, *even substantial evidence*, that would support the opposite conclusion. *See Listenbee*, 846 F.2d at 349; *Smith*, 99 F.3d at 781-82.

In his decision, ALJ Erwin declined to credit Dr. Nyunt's "opinion regarding the [Plaintiff's] functional limitations [as they] appear to be premised entirely upon the [Plaintiff's] subjective reports and not upon the objective, clinical findings." (Tr. 30). The weight given a medical opinion depends upon the extent to which it is supported by relevant evidence, "particularly medical signs and laboratory findings," and the extent to which it is consistent with the record as a whole. 20 C.F.R. § 404.1527(d)(3)-(4). The Sixth Circuit has held that an ALJ may reject a medical opinion that is inconsistent with the record and formed "solely from [the claimant's] reporting of [his] symptoms and conditions." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). ALJ Erwin found that Dr. Nyunt's opinion was not supported by his own clinical findings, nor the record as a whole, because it relied solely on Plaintiff's unsubstantiated subjective complaints.

Evaluating Plaintiff's allegations of chronic arthritic and low back pain, the ALJ considered the factors expressed in 20 C.F.R. § 404.1527(d)(1) through (6). The ALJ found that Plaintiff's "primary care notes reflect only sporadic complaints of such symptoms and are essentially bereft of any significant clinical findings." (Tr. 29). "Moreover," he continued in his decision, "there are no diagnostic studies such as x-rays or MRIs to identify any clinical pathology to account for the [Plaintiff]'s symptoms, and it does not appear that the [Plaintiff] has ever pursued orthopedic, neurosurgical or physical therapy treatment in an attempt to alleviate symptoms." (*Id.*). Nor has he "required long-term

6

treatment with narcotic medications or muscle relaxers." (*Id.*). This lack of support in the record for such restrictive limitations in conjunction with the ALJ's finding that the limitations suggested by Dr. Nyunt were merely a recitation of the Plaintiff's subjective complaints, led ALJ Erwin to properly discredit the functional limitations expressed in Dr. Nyunt's report.

Furthermore, ALJ Erwin did consider and give weight to the findings made by Dr. Nyunt during his examination of Plaintiff. The ALJ credited these findings to support additional functional limitations beyond what is suggested in the reports of Drs. Caudill and Baez-Garcia. (Tr. 29). Upon examination, Dr. Nyunt found "decreased range of motion in the lumbar spine as well as mildly positive straight leg raising and mildly decreased motor strength in the lower extremities." (*Id.*). The ALJ considered these findings in conjunction with Plaintiff's "history of very heavy work, [and] resolved this matter in the light most favorable to him and afforded appropriate exertional and nonexertional limitations." (Tr. 29). The ALJ therefore properly incorporated additional restrictions into Plaintiff's residual functional capacity to the extent they are supported by objective medical evidence and clinical findings.

Plaintiff further attacks ALJ Erwin's decision not to grant weight to the opinion of Dr. Nyunt because the ALJ "did not obtain any further evaluation or solicit input from another medical advisor which could have provided substantial evidence to reject Dr. Nyunt's opinion." (Doc. # 10-1 at 6). When the record contains sufficient evidence to make a disability determination, the ALJ is not required to seek additional evidence, even if evidence within the record is inconsistent. 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in [Plaintiff's] case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see

7

whether we can decide whether [Plaintiff is] disabled based on the evidence we have."). Although the ultimate limitations suggested by Dr. Nyunt are inconsistent with those recommended by Drs. Caudill and Baez-Garcia, this inconsistency alone is not sufficient to necessitate additional evidence. With reference to the medical findings and other evidence in the record as a whole, ALJ Erwin was able to reach a disability determination that is supported by substantial evidence. Therefore, it was unnecessary for the ALJ to seek additional medical evidence.

Additionally, Plaintiff contends that "ALJ Erwin recognized that the determinations by the state agency's reviewing physicians were unsupported," and that his "rejection of the assessment by Dr. Nyunt is not supported by substantial evidence, because he also rejected the opinions of the agency's non-examining sources." (Doc. # 10-1 at 6-7). This is factually inaccurate. The ALJ did not wholly reject the opinions of the state agency consultants nor label them as unsupported, but rather found that the record as a whole warranted the imposition of additional restrictions. (Tr. 30). The ALJ reached this determination in part by crediting the findings made by Dr. Nyunt during examination and "resolv[ing] this matter in the light most favorable to [Plaintiff]." (*Id.*). As discussed in more depth in the subsequent section, ALJ Erwin did not wholly reject all medical opinions offered as to Plaintiff. Rather, he arrived at his RFC determination after careful consideration of the administrative record as a whole, and incorporated those opinions and findings that he determined to be credible and well supported.

ALJ Erwin declined to give weight to the opinion of Dr. Nyunt insofar as it was unsupported by the record as a whole and merely recited the subjective complaints of Plaintiff. He clearly articulated these reasons and the evidentiary support for his

conclusions in his decision. Accordingly, the ALJ properly rejected the functional limitation findings of Dr. Nyunt, and his decision to do so is supported by substantial evidence.

### 2. The ALJ Properly Arrived at His RFC Determination

Plaintiff next claims that the ALJ "impermissibly struck a compromise between the opinion of Dr. Nyunt and the nonsevere findings of Drs. Caudill and Baez-Garcia" in making his RFC determination. (Doc. # 10 at 1). However, an examination of the ALJ's decision refutes this argument. The Court recognizes that the ALJ is ultimately responsible for assessing a plaintiff's RFC and "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p; 20 C.F.R. § 404.1546(c). Plaintiff contends that "ALJ Erwin did not identify any assessment or opinion to support the residual functional capacity he adopted." (Doc. # 10-1 at 7). This statement is inaccurate as the ALJ has identified and discussed the medical opinions and evidence which he credits in arriving at Plaintiff's RFC. In his decision, the ALJ cited the opinions of Drs. Caudill and Baez-Garcia finding that Plaintiff's "impairments were durational to less than severe in nature." (Tr. 30). These findings support the ALJ's determination that Plaintiff could perform a range of light work. The ultimate RFC determination also reflects the findings of Dr. Nyunt and others in the record which "warrant[] the imposition of further exertional and nonexertional limitations." (*Id.*) Plaintiff cites no authority that requires an ALJ's RFC determination to mirror a single medical opinion. Rather, the ALJ must base his assessment on "*all* of the relevant evidence in the case record." SSR 96-8p (emphasis added); *see* SSR 96-6p. The Court finds that the ALJ's decision satisfies these requirements, providing sufficient discussion of the evidence he considered, the weight

9

each was given, and how those findings support his conclusions. Thus, ALJ Erwin's RFC determination is supported by substantial evidence.

Plaintiff suggests that by considering and drawing from more than one medical opinion in reaching his RFC determination, "ALJ Erwin succumbed to the temptation to 'play doctor' as referenced in *Simpson v. Commissioner of Social Security*." (Doc. # 10-1 at 7) (citing *Simpson*, 344 F. App'x 181, 194 (6th Cir. 2009) (unpublished)). In *Simpson*, the Sixth Circuit stated that "an ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'" 344 F. App'x at 194 (citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)). Plaintiff's reliance on this case is misplaced for numerous reasons. First, there is no treating source opinion under consideration in this matter. Second, the ALJ's decision not to credit the opinion of Dr. Nyunt was precisely because he found that it was *not* supported by the medical evidence, and rather was a recitation of Plaintiff's subjective complaints. Third, the determination of ALJ Erwin is based on other medical opinions, findings and objective medical evidence of record, not merely "his own medical judgment." Furthermore, the case relied on by Plaintiff acknowledges that "'[t]he ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences.'" *Id.* (quoting *McCain v. Dir., OWCP*, 58 F. App'x 184, 193 (6th Cir. 2003)). In determining the credibility of the medical opinions and findings in the record, ALJ Erwin considered the degree to which they were supported by and consistent with the objective medical evidence and the record as a whole and granted weight to each accordingly.

Plaintiff further argues that "the manner in which the ALJ weighed the evidence is improper." (Doc. # 10-1 at 8). This contention is based on an application of the findings in *Hensley v. Commissioner of Social Security*, 573 F.3d 263 (6th Cir. 2009), however the principles of *Hensley* are not applicable to the instant case. Per Plaintiff's own brief, *Hensley* stands for the proposition that "regulatory requirements regarding deference for treating sources may not be circumvented by adopting restrictions which fall between the opinions of an agency source and a treating source." (Doc. # 10-1 at 7). In *Hensley*, the decision of the ALJ denying benefits was rejected because the ALJ "failed to give controlling weight to a medical evaluation by the claimant's treating physician or to explain his reason for such action." *Hensley*, 573 F.3d at 264. Plaintiff's reliance is again misplaced. Plaintiff concedes that Dr. Nyunt is not a treating source, and, moreover, there are no treating source opinions under consideration in this case. Additionally, the ALJ did articulate his reasoning for declining to credit portions of Dr. Nyunt's opinion, as explained in detail above.

Plaintiff attempts to avoid the blatant distinction between treating and non-treating sources by asserting that the analysis in *Hensley* still applies. (Doc. # 10-1 at 8). Plaintiff argues that pursuant to 20 C.F.R. § 404.1527(f)(2)(ii), "unless a treating source opinion is given controlling weight, the Administrative Law Judge must explain in the decision the weight given to the opinion of the state agency medical consultant, as he must do for opinions from treating sources." (Doc. # 10-1 at 8). Although this is an accurate partial reading of this regulation, Plaintiff fails to place this mandate in context. First, Plaintiff does not indicate that the sentence continues in its explanation: ". . . as the [ALJ] must do for

11

any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(f)(2)(ii).  Second, Plaintiff fails to note that the purpose of subsection (f) is chiefly to label opinions of *non*examining sources as "opinion evidence," requiring that they be considered applying the same rules and subject to the same criteria as other opinion evidence, found in subsections (a) through (e) of that section.  *Id.*  Accordingly, because no treating source opinion has been given controlling weight in this case, ALJ Erwin was required by the regulations to explain the weight given to the opinions of the one-time consultative examiner, Dr. Nyunt, as well as the nonexamining state agency consultants, Drs. Caudill and Baez-Garcia.  The Court finds that the ALJ has complied with the regulations and has satisfied this requirement.

      The ALJ properly weighed the opinion and findings of Dr. Nyunt and explained his reasoning in his decision, as previously discussed.  Likewise, the ALJ properly considered and weighed the opinions of the state agency reviewing physicians, Drs. Caudill and Baez-Garcia, according to the criteria listed in 20 C.F.R. § 404.1527(a) through (e).  According to his August 13, 2007 report, Dr. Caudill determined that Plaintiff's "allegations appear to be non-severe or will not last 12 months."  (Tr. 253).  Dr. Baez-Garcia submitted a report on September 28, 2007, in which he found "[n]o significant change since [the] initial assessment," affirming Dr. Caudill's determination that Plaintiff's impairments were non-severe.  (Tr. 309).  In his decision, the ALJ confirmed that he "considered the state agency findings that the [Plaintiff's] impairments were durational to less than severe in nature." (Tr. 30).  However, he also found that "the longitudinal record warrants the imposition of further exertional and nonexertional limitations" than those findings alone would suggest.  (*Id.*).  The ALJ did not reject the state agency findings, nor did he suggest that they are

unsupported, but rather found that based on the administrative record as a whole, there is evidence to support the imposition of additional limitations.

Plaintiff again misconstrues the regulations, incorrectly stating that 20 C.F.R. § 404.1527(d)(1) dictates "that the agency will give more weight to the opinion of a source who has examined the [plaintiff] than to the opinion of a source who has not examined him." (Doc. # 10-1 at 8). While the opinions of examining medical sources are generally given more weight than those of non-examining medical sources, all medical opinions are subject to evaluation and the examining relationship is merely one factor among many that an ALJ must consider. 20 C.F.R. § 404.1527(d)(1)-(6). Furthermore, ALJs are instructed by the regulations that state agency medical consultants "are highly qualified . . . [and] experts in Social Security disability evaluation," 20 C.F.R. § 404.1527(f)(2)(I), and "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). As previously discussed, ALJ Erwin properly considered these medical opinions in light of the requisite criteria set out in the regulations, and assigned weight to them accordingly in reaching his RFC determination.

The ALJ need only incorporate those limitations in his RFC assessment which he has deemed credible. *Stanley v. Sec'y Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994). ALJ Erwin considered the findings of Dr. Nyunt, the opinions of Drs. Caudill and Baez-Garcia, as well as the remainder of the evidentiary record. The ALJ did not devise his own medical findings, as suggested by analogy to *Hensley*, but rather granted weight to all medical opinions and findings to the extent that they were supported by, and consistent with, the record as a whole. Therefore, the RFC determination of ALJ Erwin is

13

supported by substantial evidence and must be affirmed.

        3.        **Plaintiff's Response to the SSA's Motion for Summary Judgment**

Plaintiff filed a Response to the Commissioner's Motion for Summary Judgment (Doc. # 12) in which he asserts that the ALJ erred to the extent that he relied on the opinions of Drs. Caudill and Baez-Garcia, alleging that the opinion of Dr. Baez-Garcia "merely affirmed the Caudill findings, and Dr. Caudill was not qualified to offer an opinion in this case." (Doc. # 12 at 4). To support the proposition that Dr. Caudill was not qualified to offer an opinion, Plaintiff has attached two exhibits to his response. The first exhibit consists of pages from the Georgia and Kentucky state medical board web-sites, which Plaintiff asserts prove that Dr. Caudill is a physician licensed in Georgia and not licensed in Kentucky. (Doc. # 12-1). The second is a letter from the Department for Disability Determination Services written in 2003 regarding a prior case that Plaintiff's counsel served as representation in. (Doc. # 12-2). This letter states that "Federal Regulations require a consultative examination provider to be currently licensed in the state where the examination takes place." (*Id.* at 2). Neither the letter nor Plaintiff's Response cite the specific regulation in question, nor do they define what types of physicians this provision was intended to regulate. Plaintiff fails to present the Court with any regulatory or case law authority requiring that a nonexamining medical consultant be licensed in a specific state.

The letter relied on by Plaintiff for this purpose specifically addresses consultative examiners, requiring that they be licensed where the examination takes place. The Court will assume, therefore, that Plaintiff intends to invoke the requirement found at 20 C.F.R. § 404.1519g that a medical source will be considered qualified as a consultative examiner

if he or she is "currently licensed in the State and have the training and experience to perform the type of examination" requested. This reliance, however, is misplaced as Dr. Caudill did not provide his medical opinion as a "consultative examiner," but rather as a *non-examining* agency consultant. There was no examination performed by Dr. Caudill, rendering the requirements of 20 C.F.R. § 404.1519g inapplicable to his qualifications to provide a medical opinion.

Nonexamining consultants providing a medical opinion are still subject to certain regulatory requirements. A "[n]onexamining source means a physician, psychologist, or other acceptable medical source who has not examined [the plaintiff] but provides a medical or other opinion in [plaintiff's] case" and "includes State agency medical and psychological consultants." 20 C.F.R. § 404.1502. A list of acceptable medical sources can be found at 20 C.F.R. § 404.1513(a), which includes "licensed physicians." Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [plaintiff's] impairment(s), including [plaintiff's] symptoms, diagnosis and prognosis, what [plaintiff] can still do despite impairment(s), and [plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The print-outs offered by Plaintiff support a finding that Dr. Caudill is indeed a licensed physician. (Doc. # 12-1). Further, Dr. Caudill's medical opinion does reflect his own judgment "about the nature and severity of [plaintiff's] impairment(s) . . . [and] what [plaintiff] can still do," as defined in the regulations. *See* 20 C.F.R. § 404.1527(a)(2); Tr. 253. Therefore, Dr. Caudill meets the requirements of a non-examining source as defined by the regulations and his medical opinion was properly considered as a part of the record.

15

In support of his allegation that consideration of the opinion of Dr. Baez-Garcia was improper, Plaintiff cites Social Security Ruling 96-6p, defining 20 C.F.R. § 404.1527 to require that "the opinions of agency reviewing physicians can be given weight only insofar as they are supported by evidence in the case record." (Doc. # 12 at 4). However, Dr. Caudill was qualified as a physician to submit a medical opinion and his opinion was properly a part of the record. Accordingly, the ALJ properly considered and granted weight to the findings of both Dr. Caudill and Dr. Baez-Garcia.

### III. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's RFC determination and his finding that Plaintiff was not disabled for purposes of the Social Security Act are supported by substantial evidence. Accordingly,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED**; and

4. A separate Judgment affirming this matter will be entered contemporaneously herewith.

This 10th day of January, 2012.



Signed By:
*David L. Bunning*   DB
**United States District Judge**

G:\DATA\SocialSecurity\MOOs\London\11-96 Bray MOO.wpd

17